IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NANCY BOYD,

    Plaintiff,

vs.                                        NO. CIV 07-502 JCH/RLP

THE UNITED STATES OF AMERICA,

    Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

1. At approximately 4:15 to 4:30 p.m., on the afternoon of Saturday, February 12, 2005, Plaintiff Nancy Boyd (hereinafter, "Plaintiff") slipped and fell at the Main Post Office located on Broadway Blvd., N.E., in Albuquerque, New Mexico.

2. On February 12, 2005, Julian Romero was a custodian for the United States Postal Service (hereinafter, "USPS").

3. Just prior to the Plaintiff's fall, Mr. Romero mopped and waxed the portion of the lobby at the Main Post Office in which the post office boxes are located which is also referred to as the boxing lobby.

4. The boxing lobby at the Main Post Office is open twenty-four hours a day, seven days a week.

5. Mr. Romero used A-frames and yellow caution tape to indicate the area where he had waxed the floor and that the floor was wet.

6. The A-frames had the following wording on them: "CAUTION WET FLOOR".

7. The caution tape had the word "CAUTION" repeated at regular intervals.

8. Because it was a Saturday, the gate between the boxing lobby and the main lobby was closed.

9. On Saturday, the only entrance from which the customers could access their post office boxes was the south entrance and Plaintiff entered from the south entrance.

10. After Plaintiff entered the Post Office but before she entered the boxing lobby, she and Mr. Romero walked past each other but Mr. Romero did not know the exact location of Plaintiff's mailbox and did not expect Plaintiff to walk past the A-frames and caution tape.

11. The area where the Plaintiff's mailbox was located was within the area that was segregated by the A-frames and the caution tape.

12. Plaintiff saw at least three A-frames, one of which said "CAUTION WET FLOOR".

13. Plaintiff understands the term "wet floor" to mean that the floor is covered with or soaked with liquid.

14. According to Mr. Romero, when freshly waxed, the floor in the boxing lobby looks very shiny.

15. The wax used in the boxing lobby had a very strong and noticeable odor.

16. The yellow caution tape was strung from and tied to the A-frames in such a manner as to block access to the portion of the boxing lobby floor which had been mopped and waxed

17. With the A-frames and caution tape, Mr. Romero had completely identified

and segregated the area which had been waxed.

18. Plaintiff saw that the floor was wet.

19. Plaintiff looked on both sides of the carousel and decided that the floor on the one side looked less wet and decided she would "take a chance" and go get her mail.

20. In order to get to her post office box, Plaintiff had to pass the A-frames and walk on the wet, waxed floor.

21. The Postal Service employees who responded to Plaintiff's fall could see the marks on the floor where Plaintiff fell, and the marks were past the A-frames and caution tape.

22. Plaintiff walked onto the wet floor despite seeing that the floor was wet and despite the cautionary A-frames and tape.

23. Plaintiff fell on the very first step she took on the area which looked wet to her.

24. Plaintiff knowingly stepped onto an area which she knew was wet.

## Conclusions of Law

1. This Court has jurisdiction over this action and venue is appropriate in the United States District Court for the District of New Mexico.

2. The Federal Tort Claims Act incorporates "the law of the place where the act or omission complained of occurred," in this case, New Mexico.

3. Under New Mexico law, an owner owes a visitor the duty to exercise ordinary care to keep the premises safe for the visitor's use.

4. The owner of the premises, however, is not the insurer of the safety of its

visitors.

5. An act, to be "negligence", must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to herself or to another and which such a person, in the exercise of ordinary care, would not do.

6. "Ordinary care" is that care which a reasonably prudent person would use in the conduct of the person's own affairs.

7. Defendant was not negligent in its actions on February 12, 2005.

8. Defendant exercised ordinary care to keep the premises safe for visitors such as Plaintiff.

9. Plaintiff was warned of any potential danger and failed to heed it.

10. Defendant's warning of any potential danger was adequate under the circumstances.

11. Every person has a duty to exercise ordinary care for the person's own safety.

12. Plaintiff did not exercise ordinary care for her own safety.

13. Plaintiff was negligent, and her negligence was the sole proximate cause of her injuries and damages.

14. Plaintiff's negligence was not foreseeable.

15. Defendant is entitled to judgment as a matter of law.

_____
United States District Judge